# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAMADJON KARAEV,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>KRISTI NOEM, et al.,<br><br>　　　　Respondents. | Case No. 1:26-cv-00303-JLT-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS, DENY MOTION FOR PRELIMINARY INJUNCTION AS MOOT, AND DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER<br><br>(ECF Nos. 1, 2) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.**

**BACKGROUND**

Petitioner is a citizen of Tajikistan and entered the United States on or around May 22, 2022. Upon entry, Petitioner was detained, granted interim parole pursuant to 8 U.S.C. § 11822(d)(5), and released in June 2022. (ECF No. 1 at 2; ECF No. 1-4 at 7–8.[1]) At that time, Petitioner was not issued an expedited removal order and was not referred for a credible fear interview. Petitioner alleges that he never had any issue satisfying any of his reporting requirements and was given very minimal reporting requirements.[2] In November 2022, Petitioner

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

[2] The interim notice authorizing parole states:

　　Parole is conditioned on you complying with the terms and conditions of your release. You must notify ICE <u>and</u> the immigration judge of any address correction or address change. You must report for every scheduled hearing before the immigration court and every appointment as directed

filed a Form I-589 with the U.S. Citizenship and Immigration Services ("USCIS") asylum office. USCIS accepted the filing and the application remained pending for nearly three years. (ECF No. 1 at 2.)

On June 4, 2025, Petitioner received notification that his I-589 was dismissed because when Petitioner was apprehended by Department of Homeland Security ("DHS") officials he was issued "Form I-860, Notice and Order of Expedited Removal." (ECF No. 1 at 2–3.) Petitioner asserted his right to a credible fear interview, which was held on October 1, 2025. Petitioner received a positive credible fear finding. At his interview, and with no notice at all, U.S. Immigration and Customs Enforcement ("ICE") apprehended Petitioner and took him into custody. He has remained detained since that time and was placed into removal proceedings pursuant to Immigration and Nationality Act ("INA") section 240. He has no court date on calendar and is being held at the California City Detention Center. (ECF No. 1 at 3.) On December 4, 2025, an immigration judge ("IJ") denied Petitioner's request for a custody determination because the immigration court "lacks jurisdiction over the request for custody redetermination. See Matter of YAJURE HURTADO, 29 I&N Dec. 216 (BIA 2025)." (ECF No. 1-4 at 10.)

On January 14, 2026, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) On January 15, 2026, Petitioner filed a motion for temporary restraining order ("TRO"). (ECF No. 3.) The assigned district judge denied the motion for TRO as untimely but converted the motion for TRO "to a motion for preliminary injunction and refer[red] the matter to the assigned magistrate judge to determine as soon as possible." (ECF No. 4.)

On January 15, 2026, the Court ordered Respondents to file a response to the motion for preliminary injunction within fourteen days. (ECF No. 5.) As Respondents failed to file a response within fourteen days, on January 31, 2026, Petitioner requested that the Court treat the motion for preliminary injunction as unopposed, rule on the motion without delay based on the

---

by ICE (including for removal from the United States should you become subject to a final removal order). You must not violate any local, State or Federal laws or ordinances. You must comply with any other specified conditions if identified separately.
(ECF No. 1-4 at 7.)

existing record, and grant the relief requested. (ECF No. 6.) On February 2, 2026, Respondents filed a request for an extension of time to file a response to the motion for preliminary injunction. (ECF No. 9.) The Court granted the extension of time and denied Petitioner's request to rule on the motion for preliminary injunction without further briefing. (ECF No. 10.) On February 3, 2026, Respondents filed an opposition to the motion for preliminary injunction and the petition, and Petitioner filed a reply. (ECF Nos. 11, 12.)

## II.

## DISCUSSION

The Court recommends advancing the merits determination and consolidating it with the resolution of the preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a)(2), which provides that "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." Fed. R. Civ. P. 65(a)(2). See Dzhabrailov v. Decker, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *4 (S.D.N.Y. May 26, 2020) (considering preliminary injunction and merits of habeas petition simultaneously).

### A. Statutory Framework

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Subsection A is the default detention statute for noncitizens in removal proceedings and applies to noncitizens '[e]xcept as provided in [Subsection C].'"[3]

---

[3] Subsection C, which is not at issue here, "provides for the detention of 'criminal aliens' and states that '[t]he Attorney General shall take into custody any alien who' is deportable or inadmissible based on a qualifying, enumerated offense." Avilez, 69 F.4th at 530 (alteration in original) (quoting 8 U.S.C. § 1226(c)).

Avilez, 69 F.4th at 529 (alterations in original) (quoting 8 U.S.C. § 1226(a)). "[D]etention under Subsection A is discretionary" and "provides for release on bond or conditional parole." Avilez, 69 F.4th at 529. "When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination," and the noncitizen "will be released if he 'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'" Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (quoting 8 C.F.R. § 236.1(c)(8)).

"[A]n alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(a)(1)). "Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law." Jennings, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(3)). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings, 583 U.S. at 287. "Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens." Id.

"Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion." Jennings, 583 U.S. at 287 (citations omitted). "Aliens covered by § 1225(b)(1) are normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." Id. (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). "But if a § 1225(b)(1) alien 'indicates either an intention to apply for asylum ... or a fear of persecution,' then that alien is referred for an asylum interview." Jennings, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(b)(1)(A)(ii)). "If an immigration officer determines after that interview that the alien has a credible fear of persecution, 'the alien shall be detained for further consideration of the application for asylum.'" Jennings, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)).

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is

4

not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Thus, "[a]ll applicants for admission who are not processed for expedited removal [pursuant to § 1225(b)(1)] are placed in regular removal proceedings under § 1225(b)(2)(A). That process generally entails a hearing before an immigration judge pursuant to § 1229a." Innovation Law Lab v. McAleenan, 924 F.3d 503, 507 (9th Cir. 2019).

"Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)) (citing 8 C.F.R. §§ 212.5(b), 235.3 (2017)). "Such parole, however, 'shall not be regarded as an admission of the alien.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)). "Instead, when the purpose of the parole has been served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

**B. Due Process**

In the second, sixth, and seventh[4] causes of action, Petitioner asserts that his re-detention and revocation of parole without notice and a pre-deprivation hearing before a neutral decisionmaker violated due process. (ECF No. 1 at 9–12, 14–16.) Respondents argue that because Petitioner is "an 'applicant for admission' who is subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)(2)" and "does not possess a right to freedom from immigration detention in any form other than the form provided by Congress," the motion for preliminary injunction and the habeas petition should be denied. (ECF No. 11 at 1, 2.)

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Even when the government has discretion to detain an

---

[4] The petition mistakenly labels three fifth causes of action. (ECF No. 1 at 14.) The Court will refer to the due process claim regarding revocation of parole without notice as the sixth cause of action and the due process claim regarding revocation of parole without neutral decisionmaker as the seventh cause of action.

individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release." Garro Pinchi v. Noem, No. 25-CV-05632-PCP, --- F. Supp. 3d. ----, 2025 WL 3691938, at *30 (N.D. Cal. Dec. 19, 2025) (citing Morrissey v. Brewer, 408 U.S. 471, 482 (1972)). "Other courts, including this Court, have held similarly." J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT-SKO, 2025 WL 3523108, at *10 (E.D. Cal. Dec. 9, 2025) (citing Doe v. Becerra, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). Regardless of whether mandatory detention under § 1225(b) is facially constitutional, and "[e]ven assuming Respondents are correct that § 1225(b) is the applicable detention authority for all 'applicants for admission,' Respondents fail to contend with the liberty interest created by the fact that the Petitioner in this case was released" on parole. J.E.H.G., 2025 WL 3523108, at *10.

"Many district courts in the Ninth Circuit have found that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in their continued release, entitling them to certain due process protections, the extent of which are determined by applying the test provided in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)." Rocha Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025). See D. L.C. v. Wofford, No. 1:25-cv-01996-DC-JDP (HC), 2026 WL 25511, at *4 (E.D. Cal. Jan. 5, 2026) ("Following *Pinchi*, a substantial number of district courts in the Ninth Circuit have found that noncitizens paroled into the United States under § 1182(d)(5) have a liberty interest in their continued release and are entitled to certain due process protections.").

"Thus, the Court must evaluate the three-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334-335 (1976), to determine whether the procedures (or lack thereof) that have been applied to Petitioner are sufficient to protect the liberty interest at issue." J.E.H.G., 2025 WL 3523108, at *11.

///

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

As to private interest, it "is beyond dispute" that Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Second, the risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." Rocha Chavarria, 2025 WL 3533606, at *4. See Kakkar v. Chestnut, No. 1:25-CV-1627 JLT SAB, 2025 WL 3638298, at *7 (E.D. Cal. Dec. 15, 2025) ("Turning to the second factor, the risk of erroneous deprivation of Petitioner's liberty is high where, as here, '[the petitioner] has not received [and will not receive] any bond or custody redetermination hearing.'" (alterations in original) (quoting A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025))). "Finally, as other courts have done, this Court concludes that the government's interest in detaining Petitioner without proper process is slight." J.E.H.G., 2025 WL 3523108, at *12. Accordingly, the Mathews factors weigh in favor of a bond hearing.

Based on the foregoing, the Court recommends finding that Petitioner has a protected liberty interest in remaining out of custody and that his re-detention without a bond hearing violates due process.[5]

The Court considers whether a pre-deprivation or post-deprivation bond hearing is appropriate based on the facts of this case.

> The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). However, the Court also

---

[5] In light of this conclusion, the Court declines to address Petitioner's other causes of action.

recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Id.* at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted his detention was pretextual, given that ICE first became aware of petitioner's alleged violations a few hours before his immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for his arrest. *Id*. In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction sub nom, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate release of in immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed.

In contrast, this Court ordered a parole revocation hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations was "not obviously pretextual." *Id*. at * 12 ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight."). As this Court noted in *Martinez Hernandez*:

> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing *Perera v. Jennings*, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

*Id*.

J.E.H.G., 2025 WL 3523108, at *11–12.

Here, there is nothing in the record before this Court establishing that Petitioner has violated any conditions of his release. Respondents do not argue that Petitioner's re-detention was based on any violations or that Petitioner is now considered a flight risk or danger to the

community. Accordingly, the Court recommends that a pre-deprivation hearing is appropriate based on the facts of this case, and that "the burden at any such hearing [be placed] on the government to demonstrate to a neutral decisionmaker by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight." J.E.H.G., 2025 WL 3523108, at *14 (citing Pinchi v. Noem, 792 F. Supp. 3d 1025, 2025 WL 2084921, at *7 (N.D. Cal. 2025)). See J.E.H.G., 2025 WL 3523108, at *14 ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.").

**C. Abeyance Pending Rodriguez Vazquez v. Bostock Appeal**

Alternatively, Respondents argue that the Court should hold the matter in abeyance pending the Ninth Circuit's resolution of Rodriguez Vazquez v. Bostock, No. 25-6842. (ECF No. 11 at 2.) Respondents also note:

> Two district courts within the Ninth Circuit have recently vacated or stayed the Department of Homeland Security's July 8, 2025 "Interim Guidance Regarding Detention Authority for Applicants for Admission"—which takes the position that all applicants for admission within the meaning of 8 U.S.C. 1225(a) are subject to mandatory detention under 8 U.S.C. 1225(b)—as contrary to law under the Administrative Procedures Act. *Maldonado Bautista v. Noem*, No. 5:25-cv-01873, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025) (vacating the guidance); *Garro Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 3691938 (N.D. Cal. Dec.19, 2025) (staying the guidance within ICE's San Francisco area of responsibility, an area that includes the Eastern District of California, pending final resolution of the APA claim). The government has appealed the *Maldonado Bautista* judgment to the Ninth Circuit. Ninth Circuit docket No. 25-7958, but neither the district court nor the Ninth Circuit has issued a stay of the district court's order.

(ECF No. 11 at 1 n.1.)

"Until [2025], the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *3 (N.D. Cal. Sept. 12, 2025). In its briefing in Salcedo Aceros, "the Government acknowledge[d] that 'until recently,' it considered § 1226(a) to be an available detention authority for noncitizens who might also be subject to § 1225." Id. (citation omitted).

On July 8, 2025, the Department of Homeland Security (DHS) instituted a notice titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." [Dkt. No. 5-2 at 45–46, "DHS Guidance Notice" or "DHS Policy"]. The Notice communicated DHS's choice, in coordination with the Department of Justice ("DOJ") to "revisit[ ] its legal position on detention and release authorities," determining that Section 235 of the Immigration and Nationality Act ("INA") would serve as the applicable immigration detention authority rather than Section 236 for all "applicants for admission." [*Id.*]. In other words, the change in policy requires ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A). Under § 1225(b)(2)(A), "applicants for admission" are subject to mandatory detention for proceedings under 8 U.S.C. § 1229(a) and not entitled to the due process protections found within § 1226(a).

Maldonado Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ----, 2025 WL 3713987, at *1 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). In Maldonado Bautista, the United States District Court for the Central District of California found that "the DHS policy is unlawful" and "the interpretation in *Yajure-Hurtado*, 29 I. & N. Dec. 216, which contradicts the Court's reasoning is no longer controlling." 2025 WL 3713987, at *12. The district court vacated the DHS Policy under the Administrative Procedure Act. Id. at *22. The court certified the "Bond Eligible Class," which is defined as:

All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

Maldonado Bautista, 2025 WL 3713987, at *32.

In Rodriguez Vazquez v. Bostock, 802 F. Supp. 3d 1297 (W.D. Wash. 2025), the district court granted summary judgment "to the Bond Denial Class on their claims that their detention under 8 U.S.C. § 1225(b)(2) is unlawful." Id. at 1336. The Bond Denial Class is defined as:

[A]ll noncitizens without lawful status detained at the Northwest ICE Processing Center who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

Rodriguez Vazquez, 802 F. Supp. 3d at 1336. The district court declared "that Bond Denial Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)" and that "the Tacoma Immigration Court's practice of denying bond to

Bond Denial Class members on the basis of § 1225(b)(2) violates the Immigration and Nationality Act." Rodriguez Vazquez, 802 F. Supp. 3d at 1336.

Although the Ninth Circuit's resolution of Rodriguez Vazquez and Maldonado Bautista may provide guidance on the application of 8 U.S.C. §§ 1225 and 1226, the Court is skeptical the decisions will impact the Court's conclusion that Petitioner has a protected liberty interest that arises from his prior release from immigration custody. Accordingly, the Court recommends denying Respondents' request to hold the matter in abeyance pending the Ninth Circuit's resolution of Rodriguez Vazquez v. Bostock.

### III.

### RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be GRANTED on the second, sixth, and seventh causes of action;

2. Petitioner's motion for preliminary injunction (ECF No. 2) be DENIED as moot; and

3. Respondents be directed to immediately release Petitioner on the conditions of his prior release from custody until DHS proves to a neutral adjudicator by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. ///

Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **February 6, 2026**

STANLEY A. BOONE
United States Magistrate Judge